(83 South. 250)

No. 22568.

POLICE JURY OF LA SALLE PARISH v. POLICE JURY OF CATAHOULA PARISH.

(June 16, 1917.   On the Merits, Nov. 3, 1919.)

*(Syllabus by the Court.)*

On Motion to Dismiss Appeal.

1. APPEAL AND ERROR ⬧374(4)—POLICE JURIES EXEMPT FROM FURNISHING APPEAL BONDS.

Under the Act No. 173 of 1902, providing that state, parish, and municipal boards or commissions exercising public power or administering public functions shall not be required to furnish bonds in judicial proceedings, police juries are exempt from the furnishing of appeal bonds.

2. APPEAL AND ERROR ⬧374(4)—REFUSAL TO GIVE APPEAL BOND NOT WAIVER OF RIGHT TO APPEAL WITHOUT BOND.

An administrative body, exempt by law from the furnishing of bonds in judicial proceedings, does not, by failing or declining to comply with an order of appeal that attempts to require an appeal bond, waive the right to an order of appeal without bond.

On the Merits.

3. COUNTIES ⬧218—PARISHES; SUIT OR DEFENSE BY PARISHES AND POLICE JURIES IN THE NAME OF POLICE JURIES.

Parishes and police juries alike are political corporations, and, as such, either may appear or be brought into court in matters affecting the affairs of the parishes, or the administration of those affairs by the police juries; although, as is usually the case, the real party in interest being the parish, it would appear to be simpler and more logical for a parish to sue, or be sued, in its own name, rather than in the name of its police jury.

4. COUNTIES ⬧16(2) — PARISHES; DIVISION OF OLD PARISH AND NEW PARISH CREATED THEREFROM OF BALANCES ON HAND.

By section 13 of Act No. 177 of 1908, the balance on hand in the treasury of the old parish of Catahoula on January 1, 1910, after payment of the current expenses of the parish for 1909, and the debts which fell due in that year or had fallen due in previous years, was required to be divided between the parish of La Salle, carved by the act out of the old parish of Catahoula, and the parish of Catahoula, as existing after that date; and debts incurred for public improvements located in either of the new parishes and falling due after January 1, 1910, were required to be paid by the parish in which such improvement was located. Hence a balance on hand upon that date which was used in payment of debts to fall due in April, 1910, and April, 1911, for a bridge located in the parish of Catahoula, as continued in existence, was subject to division with the parish of La Salle, and that parish, through its police jury, is entitled to recover its proportion thereof from the parish of Catahoula, represented by its police jury.

Appeal from Tenth Judicial District Court, Parish of Concordia; N. M. Calhoun, Judge.

Suit by the Police Jury of La Salle Parish against the Police Jury of Catahoula Parish. Judgment for plaintiff, and defendant appeals. Motion to dismiss appeal overruled, and judgment affirmed.

W. H. Thompson, Dist. Atty., of Winnsboro, for appellant.

R. M. Taliaferro, of Harrisonburg, and S. L. Richey, of Alexandria, for appellee.

### On Motion to Dismiss Appeal.

O'NIELL, J. The parish of La Salle was created by the Act No. 177 of 1908, embracing the western part of the parish of Catahoula. It was provided in the statute that it should be in full operation and effect on and after the 2d of January, 1910, if approved and ratified by a majority of the qualified electors of the parish of Catahoula voting at a special election to be held for that purpose in October, 1908. The statute was so ratified and approved, and the government of the new parish went into full operation at the beginning of the year 1910.

Section 13 of the statute, providing for an apportionment of the revenues and expenses of the old and the new parish, declared that all revenues from taxes and licenses, in the old parish as it formerly existed, for the year 1909, should be applied to the payment of the usual current expenses arising for that year, and to the payment of the indebtedness of the old parish of Catahoula due prior to or within the year 1909; and that any balance remaining from the revenues of that or any previous year should be divided equally between the parishes of Catahoula and La Salle, after the amount should be ascertained by the police juries of the respective parishes. As to any indebtedness for any public improvements, falling due after the 1st of January, 1910, it was provided that the indebtedness should be assumed by the parish in which the public improvement, for which the debt would be due, would then be situated or located.

Under the foregoing provisions of the law, the plaintiff sued and obtained judgment for $3,100, on the allegations, and proof to the satisfaction of the district judge, that the police jury of the old parish of Catahoula, in January, 1909, anticipated and paid a debt

of $6,200 represented by two promissory notes of the parish for $3,100 each, due, respectively, on the 1st of April, 1910, and the 1st of April, 1911, for a bridge built across Little river at Jonesville, in the new or remaining parish of Catahoula.

Having rendered and signed the judgment at chambers, as authorized by the Act No. 94 of 1898, the district judge thereupon, without any motion or petition from the defendant, entered an order granting the defendant an appeal to the Supreme Court on condition that the appellant should furnish a bond for $75 for a devolutive appeal, or for the amount required by law for a suspensive appeal. The judgment and order of appeal were signed on the 12th of July, 1916, and the appeal was made returnable on the 8th of August, 1916.

The defendant did not perfect the appeal or accept the order thus granted, but ignoring that order, filed a petition praying for a devolutive appeal, on the 10th of April, 1917. The appellant did not ask or suggest that the district judge should not require that an appeal bond be furnished, or should grant the appeal without fixing the amount of the bond for the devolutive appeal. The prayer was merely that a devolutive appeal be granted, returnable to the Supreme Court, "all to be done in accordance with law," etc. In the order for the devolutive appeal, the district judge, being of the opinion that the Act No. 173 of 1902 exempted police juries from the requirement to furnish an appeal bond, did not fix the amount of a bond for the appeal, but expressly declared that the appellant was not required to give an appeal bond. The appellant filed the record in this court before the return day, but did not furnish an appeal bond.

The appellee has moved to have the appeal dismissed, on the grounds: (1) That the appellant is not exempt from the obligation of appellants generally to furnish a bond and

security, for an amount to be fixed by the judge granting the order, for a devolutive appeal; and in the alternative (2) that, by failing to file the record in this court within the time fixed in the first order of appeal, the defendant abandoned the appeal and had no right to another order of appeal.

[1] If the law required a police jury to furnish a bond for an appeal, it was the duty of the district judge to fix the amount of the bond for a devolutive appeal, because it is not fixed or determinable by any law. The appellant complied with the order granting the appeal without bond. Hence, if it was an error to dispense with the appeal bond, it was the error of the judge and not of the appellant.

We are of the opinion, however, that the district judge was correct in his interpretation of the Act No. 173 of 1902. It provides that certain state and municipal boards and commissions named in the statute "and other state, parish and municipal boards or commissions exercising public power or administering public functions shall not be required to furnish any bond whether of appeal or otherwise in any judicial proceedings instituted either by or against said boards or commissions." A police jury is, within the plain meaning and intent of the law, a parish board or commission exercising public power and administering public functions. In fact, those public officials, called police "jurors" in this state, are called county "commissioners" in other states. We have no doubt that the Legislature meant to include police juries in the general terms of the statute referring to all public administrative boards or commissions. And we hold that the language of the statute does include them.

[2] Referring to the other cause for which the appellee moves to dismiss the appeal, it is plain that, as the law did not require the appellant to furnish a bond for an appeal,

145 LA.—34

the appellant did not, by failing or declining to give the bond required in the first order of appeal, abandon or waive the right to an order of appeal without bond. On the other hand, if the law had required the police jury to furnish the bond for an appeal, the appeal first granted was not perfected, and therefore the district court was not divested of jurisdiction to grant another order of appeal.

The motion to dismiss the appeal is overruled.

PROVOSTY, J. I concur on the ground that, the defendant not being required by law to give bond, the order granting an appeal on condition that defendant give bond was equivalent to no order at all, since a thing granted only on a condition that is not to be complied with is in fact not granted at all; and hence the said first order of appeal was for all practical purposes no order at all.

### On the Merits.

MONROE, C. J. Act No. 177 of 1908 purports to create the parish of La Salle—carving it out of the parish of Catahoula—but, as it depended for its ultimate effect upon the ratification by the electors of the parish, at an election to be held for that purpose, and the promulgation by the Governor of the result, it contained provisions to the effect that it would become finally effective on January 1, 1910, and that in the meanwhile the election should be held, that parish officers should be elected and, after the ratification and promulgation, should be inducted into office, also that the revenues thereafter to be derived from parish taxation should be disposed of and the balance on hand on January 1, 1910, divided as follows:

"Section 13. * * * That all revenues resulting from assessments and levy of taxes and licenses, in the present parish of Catahoula, for the year 1909, shall be applied to the payment

of the usual current expenses arising for that year; in and to the payment of the indebtedness of the present parish of Catahoula being due prior to or within the year 1909, and any balances remaining from the revenues of that or any previous year shall be divided equally between the parishes of Catahoula and ·La Salle, after such amount shall have been ascertained by the police juries of the respective parishes. That if there should be an indebtedness for public improvements or improvement, falling due after January 1, 1910, if such public improvement, for which such indebtedness is due be located in the parish of Catahoula, such indebtedness shall be assumed by the parish of Catahoula, or if such indebtedness is due for an improvement located in La Salle, then such amount shall be assumed by the parish of La Salle."

In July, 1916, the police jury of the parish of La Salle (as will be seen from the title) brought this suit against the police jury of the parish of Catahoula for $3,100, alleging the creation of the parish of La Salle and the above-quoted provisions of the law; and further alleging that in April, 1904, the police jury of the parish of Catahoula had contracted for the building of a bridge in that portion of the territory of the parish which remained therein after the creation of the parish of La Salle, for which bridge it had agreed to pay $24,800, in eight installments, represented by its certificates of indebtedness, each for $3,100, to fall due upon April 1st of the years 1905, 1906, 1907, 1908, 1909, 1910, 1911, and 1912, respectively, but that said police jury, had in January, 1909, paid, by anticipation, the three notes that were to fall due on April, 1, 1909, 1910, 1911, and that, according to the law, the $6,200, used in the payments of 1910, 1911, should have been divided equally with it (the parish of La Salle). And it therefore prays for judgment for $3,100 with interest.

Defendant excepted, and for grounds of exception alleged: (1) That plaintiff is without authority to bring the suit in its own name, on behalf of the parish of La Salle, and, in the alternative, that it has passed no resolution authorizing the suit; (2) that plaintiff has no interest authorizing it to bring the suit; (3) that the parish of Catahoula is the real defendant, and the police jury of that parish is improperly impleaded; (4) that the petition discloses no cause of action.

By an answer, filed with reservation of its exceptions, defendant admits that the parish of La Salle came into existence on January 1, 1910, in accordance with the provisions of Act No. 177 of 1908, and it, in effect, sets up section 13 of that act as the law of the case; but it alleges that it does not prohibit the parish of Catahoula from paying debts, not maturing in 1909, out of revenues derived from the taxes of years previous to 1909, and it avers that the payments of which plaintiff complains were made from taxes so derived. Further answering, it alleges in the alternative, and should the court hold that it had no right to make such payments, that, at the time the payments in question were made, neither the parish of La Salle nor its police jury were in existence, and that to hold that it did not have the right to make said payments would be to give the act of 1908 a retroactive effect, which would render it unconstitutional and void.

The case (the exceptions included with the merits) was submitted upon an agreed statement of facts to the following effect, to wit:

That the organization of the parish of La Salle became effective, for all legal purposes, as provided by Act No. 177 of 1908, on January 1, 1910; that the parish of Catahoula contracted for the bridge in 1904 as alleged in the pleadings, and that the bridge, as constructed, is within the present limits of that parish; that the payments of $3,100 which fell due under that contract on April 1, 1910 and 1911, were made in January, 1909, "from

funds on hand and to the credit of the police jury of Catahoula parish, derived from the collection of taxes, etc., for the year 1908 and other previous years"; that on January 1, 1910, there was a surplus of cash on hand which was equally divided between the police juries of Catahoula and La Salle parishes, according to the terms of Act No. 177 of 1908.

The statement concludes with the following:

"Is the police jury of the parish of Catahoula due and owing to the police jury of La Salle parish one-half of the amount of the certificates of indebtedness of $3,100 each, given on the price of the bridge at Jonesville, La., which matured April 1, 1910, and April 1, 1911, and which were paid by the police jury of Catahoula parish (before division) on January 1, 1909?"

### Opinion.

[3] The three first exceptions may be considered together; the fourth (of no cause of action) presents about the same issue as the answer and will be considered with the merits.

The Constitution of 1812 (article 2, § 10) declared that the "parishes" of St. Bernard and Plaquemines should form one senatorial district, and that the "counties" of German Coast, Acadia, Lafourche, etc., should each form such district; but since that time the different Constitutions that have been adopted by the people of the state have used the term "parishes" in referring to such subdivisions, and no specific grant of the corporate franchise had been made to them prior to that contained in the Constitution of 1879, article 249 of which declared that "the General Assembly may establish and organize new parishes, which shall be bodies corporate"; and that provision is incorporated (as article 277) in the Constitutions of 1898 and 1913. As early, however, as 1807 and 1813 (chapter 4), there was legislation creating bodies called "police juries" and vesting

them with authority to administer the affairs, for the most part, of the different parishes, and in 1819 it was said by this court, in a suit in which a police jury sought to recover some $4,000, in reimbursement of a like amount which had been paid out of the parish treasury for work done on defendant's levee, and in which it was set up that the plaintiff had not been incorporated and had no capacity to bring the suit:

"The acts of the Legislature of 1807 and 1813 have created political bodies to direct and manage the police of their respective parishes, under the name of police juries; and it is a principle of law that, when a corporation is formed and named by a competent authority, it acquires certain rights and powers, capacities and incapacities, among which is that of suing and being sued by its corporate name. * * * But, there is an act of Assembly, of 1817 [page 156], by which police juries are authorized to sue in cases like the present, and although passed long since the performance of the work for which remuneration is claimed, in the present action, it is not, in our opinion, unconstitutional, as being ex post facto, or impairing the obligation of a contract." Police Jury v. McDonogh, 7 Mart. (O. S.) 16, 17.

The act of 1817, thus referred to, authorized police juries "to sue any person for whose account levees, roads, etc., may have been made or repaired at the expense of the parish, and to obtain the reimbursement of said amount by privilege on the land subject to the said works." R. S. § 2743, subd. 17. And, so far as we are informed, no general authority to sue and be sued has ever, in specific terms, been conferred on the police juries. Counties are, however, classified by Judge Dillon and other writers of authority as quasi corporations, or involuntary political or civil divisions, created by general laws to aid in the administration of government, and, though they are ranked low down in the scale or grade of corporate existence, they are nevertheless recognized as possessing certain of the privileges which pertain to cor-

porations proper, such as that of acquiring and holding property and of appearing in court for the protection of their rights. Dillon on Mun. Corp. (4th Ed.) vol. 2, p. 658, § 563, note; same vol., p. 787, § 661, note. In the note last mentioned (supported by the citation of a number of adjudged cases), it is said:

"If the rights of the county are violated or threatened, redress must be sought in the name of the county, or its acknowledged agents."

In this state, such powers as are usually exercised by counties have always been vested in the police juries, as the representatives of the parishes. They, by virtue of the authority conferred upon them and not directly upon the parishes, enact the ordinances required in the administration of the local government, levy and collect the parish taxes, and contract for the erection of the parish courthouses, jails, and other buildings, the ownership of which is vested in the parishes, and for that reason, no doubt, and the further reason that (save as has been stated) the right to sue and be sued is not specifically vested in either the parishes or the police juries, that right has generally been exercised by the police juries, for the parishes, though, now and then, cases will be found in which the parishes sue and are sued in their own names. Parish of Red River v. Parish of Caddo, 118 La. 938, 43 South. 556; Parish of Caddo v. Parish of De Soto, 119 La. 120, 43 South. 978; Parish of Bossier v. Parish of Bienville, 130 La. 429, 58 South. 137; Young v. Parish of Iberville, 22 La. Ann. 87; Sterling v. Parish of West Feliciana, 26 La. Ann. 59; Parish of East Feliciana v. Gurth, 26 La. Ann. 141.

In Police Jury v. Fluker, Adm., 1 Rob. 389, plaintiff sued to recover from the estate of a former sheriff a balance alleged to be due by him of taxes collected for account of the parish, and it was objected, among other things, that the police jury had no capacity to bring the suit, which objection was overruled; the court saying:

"We do not think that the judge erred in overruling the exception as to the capacity of the police jury to institute this suit. Bodies of this description are civil corporations, created for purposes of local police, and have always been considered as qualified to stand in judgment. Police Jury v. McDonogh, 7 Martin [O. S.] 17. The reports are full of cases in which these bodies have been plaintiffs and defendants."

McGuire, for the Benefit, etc., v. Bry and Others, 3 Rob. 196, was a somewhat similar case. Plaintiff sued as the attorney in fact of the police jury of the parish of Ouachita, to recover money alleged to be due to the parish by the sureties of a former sheriff, on account of taxes collected, and various exceptions were urged, which the court overruled, holding that the police jury was a political or civil corporation, capable of suing and being sued and of appointing an agent.

"The authority of B. F. MaGuire," reads the opinion, "is not a very formal one, but a fair interpretation of it authorizes him to sue, if necessary; although it appears to us that a suit in the name of the corporation would have been more simple and less liable to objection."

It would appear to us simpler and more logical if this suit had been brought in the name of the parish in behalf of which the claim is made and against the parish which is the real debtor; but the jurisprudence of a century sanctions the manner in which it has been brought, and we find no sufficient reason for holding it to be unauthorized. The police jury, according to that jurisprudence, being competent to bring the suit, and it having been brought in its name, it is presumed, in the absence of a challenge, under oath, of the authority of the counsel by whom it was brought, that he was properly authorized to that effect.

[4] Considering the case on the merits:

The objection that, as interpreted by plaintiff, section 13 of Act No. 177 of 1908 is retroactive, and therefore unconstitutional and void, is without merit, and has not been urged in this court; and our interpretation of that section is in accord with that of the plaintiff. That is to say, we hold it to mean that all balances of revenues collected by the old parish of Catahoula from the taxes of 1909, or any previous year, are thereby required, after payment of the current expenses of 1909 and the debts which were to become due within that year, or had become due in any previous year, and prior to the payment of any debt which should or might fall due in any subsequent year, to be equally divided between the parish of La Salle, as organized for all purposes on January 1, 1910, and the parish of Catahoula, as existing on and after that date. And, as defendant used the $6,200 in question, said to have been derived from the taxes of 1908 and previous years, in paying debts which did not become due until April, 1910 and 1911, respectively, and had been incurred for a public improvement located within its territory and for which it is in terms made liable, it follows that it thereby became liable to the parish of La Salle for one-half the amount so used. It is said that the law provides that the balance shall be divided after the amount shall have been ascertained by the police jury of the two parishes, which is quite true; but that requirement assumed that the revenues derived from the taxes of 1909 and previous years, save so much as might be required to pay the current expenses of 1909 and the debts which fell due in that year and previous years would be kept in the treasury; and, since the $6,200 was used in January, 1909, in paying debts that were not to mature until April, 1910 and 1911, and which had been incurred for improvements located in defendant's territory, defendant cannot be heard to object that it was not subject to division between it and plaintiff, without convicting itself of having illegally diverted the money from the creditors of 1909 and previous years; and, so far from doing that, it asserts, and it is admitted, that, notwithstanding the use so made of the $6,200, there was still a balance which was divided with plaintiff on January 1, 1910, the amount of which balance, as appears from this suit, was erroneously determined.

The judgment appealed from is therefore affirmed.