RAWLINGS
*v.*
BARHAM.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## EDWARD COOPER *v.* C. H. HARRISON.

The claim of an agent against his principal for services in the selling of lands, is not embraced in the words "open accounts," which, by the Statute of 1852, are prescribed against in three years. Ten years is the only prescription against such a demand.
The Act of the Legislature of 9th March, 1852, giving legal interest from the maturity of debts, does not affect debts contracted anterior to the passage of the Act.

APPEAL from the District Court of Union, *Richardson*, J. *Ludeling*, for plaintiff and appellant. *C. H. Morrisson*, for defendant and appellee.

COLE, J. This suit is instituted to recover four thousand four hundred and ninety-six dollars and forty-four cents, the price of certain lands, alleged to have been sold by *W. W. Farmer*, as agent of plaintiff, who avers, that *Farmer* never accounted to him for any part thereof. This action is brought against the Administrator of said *Farmer's* estate.

The defendant admitted the agency of *Farmer* in selling the lands, and pleaded in compensation and re-convention, certain sums specified in his answer.

There was judgment in favor of the plaintiff, for the sum of $2,148 99, with five per cent. interest, from judicial demand, (12th August, 1855,) and plaintiff has appealed.

There is error in allowing a credit of $103 14, for taxes paid by *Farmer* on lands of the plaintiff: the correct amount is $79 46, as contained in the receipts from No. 1 to No. 8, inclusive.

There are three other receipts for taxes in the record, but they are for taxes on *A. Dupuyster's* land.

There is also error in stating the amount of the sale to *Geo. Kilgose* to be $220, whereas it is $270 76.

COOPER
*v.*
HARRISON.

The notes of *Jesse* and *Lewis Tubb*, are $302 10, instead of $300 10. These notes were returned to *Cooper* by the administrator, but *Farmer* had received $60 00 thereon on the 17th of August, 1853.

There is also an error in the amount alleged to have been received from *Callaway.* It is put in the judgment $401 69, whereas it is proved that *Farmer* received $591 76, being the amount of principal and interest.

It is objected by plaintiff, that the court allowed five per cent. commissions for selling on the amount of the notes of *G. & L. Tubbs*, which were returned.

The District Judge was correct. *Farmer* was entitled to be paid a commission for selling the land; he was authorized to sell it on a credit, and it is just that he should be paid for selling in accordance with instructions.

The commission of ten per cent. on the balance of the amount of sale, is also opposed by plaintiff.

*Farmer* was at one time a surveyor, and it appears that he was selected as land agent of plaintiff, because it was supposed the peculiar kowledge derived from the pursuit of that profession would render him eminently useful in the sale of lands.

*Cooper* was a large land holder, and speculated in this region of country, but his residence was in the State of New York.

It may be that ten per cent. is a very liberal allowance for the sale of plaintiff's lands; but we do not feel disposed to interfere with the opinion of the District Judge on this point, because the present suit is against an estate, and it is impossible for the administrator to show all the services rendered by *Farmer* as fully as if he were living.

Plaintiff also avers there was no agreement to pay *Farmer* for his services. The letters of plaintiff to *Farmer*, which are in evidence, show that he was instructed by *Cooper* to retain his commissions, and it was left to him to retain what he considered a fair compensation.

There is an error in the judgment in allowing interest only from judicial demand; it is due from the death of *Farmer*. C. P., Art. 989.

Defendant has plead in this court, the prescription of one, three and five years, and avers, that this action falls within the meaning of the Statute of 1852, relative to prescription. No. 118, p. 90.

Section 2, of said Act, declares "That the prescription of all other open accounts, the prescription of which is ten years under existing laws, shall be prescribed by three years."

We are of opinion, that the amounts due by an agent for the selling of lands, cannot be considered as embraced, in the sense of the Statute, in the words "open accounts." And as they are not enumerated in the Articles in the Civil Code on prescription of one, three and five years, they are consequently subject to that of ten years.

Defendant has asked in this court to have the judgment amended by allowing him a further credit of one thousand dollars. We think he is entitled to the amendment.

The Judge *a quo* considered an admission on the second of February, 1850, by plaintiff, of the receipt of one thousand dollars, as alluding to an acknowledgement of the same sum on the 21st Sept., 1848.

The internal evidence of the record is entirely in favor of viewing them as two distinct payments.

In plaintiff's letter to *Farmer*, dated Sept. 21st, 1848, he says: "I received

in May last, a remittance, from *Messrs. Bogart & Foley*, of $847 ; they having deducted $153, for money advanced and commissions, &c., which I acknowledged at the time."

This thousand dollars was perhaps the product of the sale of land to *John M. Veale*, for one thousand and seventy-eight dollars and eighteen cents cash, on the 20th of April, 1848. *Cooper* acknowledges he received the thousand dollars, less commissions, in May, 1848; as the land was sold in April, of the same year; there was about a month between the time of sale and the receipt of the money from *Farmer*, which is a reasonable lapse of time between the sale by *Farmer* and the time when the money ought to have been received by *Cooper*.

In plaintiff's letter, to *Farmer*, of Feb. 2d, 1850, he says, "your favor of 24th May, informing me of a shipment of cotton on which about "eighteen hundred dollars would be realized," I think I informed you, that one thousand dollars had been remitted to me by *Messrs. Bogart & Foley*, of New Orleans, since then I have been looking for another remittance, but presumed there was some cause for its not coming. You will please inform me on receipt of this, what prospect there is of your making a further remittance, and how you settled the matter with the persons with whom you expected to have a lawsuit. Could you possibly make arrangements to forward *the balance of* $1,800, say, *eight hundred*, if no more, by the latter part of March next."

About seventeen months elapsed between the first of three letters and the second, and it hardly seems reasonable to suppose, that he alludes, in the second letter, to an acknowledgment made so long ago.

In the first letter, he does not say he received, from *Bogart & Foley*, a thousand dollars, but only $847, they having deducted $153 for charges, &c., whereas, in the second letter, he declares that a thousand dollars had been remitted to him.

In his first letter, he declares that he received the remittance in May, 1848, whereas in the second letter he says "your favor of 24th May, (1849,) informing me of a shipment of cotton." Now, it is probable that *Farmer* informed *Cooper*, as soon as he made the shipment; it must then have been shipped about the 24th May, and there would not have been time for the cotton to arrive in New Orleans, and to be sold, so that a remittance for the price of the sale thereof, could have been received by *Cooper* in New York, in May. To accomplish this, it would have been necessary that in the short space of seven days, that is, from 24th May to the end of the month, the cotton should have arrived in the city, been sold and remittance sent from New Orleans and received in New York.

In the second letter, it is clear, that the thousand dollars remitted, were a part of the $1,800, which *Farmer* expected to realize on the cotton.

This is evident from the context, and also from the latter part of the letter where plaintiff says, "could you possibly make arrangements to forward the balance of $1,800, say eight hundred, if no more, by the latter part of March next." *Cooper* acknowledges in this letter that *Farmer* had written to him, that he expected to realize $1,800 on the cotton ; that he had received a thousand, and he asks for the balance to be sent to him. As then the $1,000 in the second letter, was a part of the money made out of the cotton, and it was shipped, probably, about the 24th May, it is not reasonable to suppose that

COOPER
v.
HARRISON.

the $847, received in May, could have been a part of the price of the cotton: if it was not, it was a payment entirely distinct from the thousand dollars acknowledged in the second letter.

Besides, we find there was sufficient money due before the date of the second letter, to have enabled *Farmer* to have remitted even more than two thousand dollars, for on the 20th April, 1848, he received $1,078 18 cash. On the 1st of January, 1848, $748 10, was due him by *George Lowery*, and a similar sum was due by him on the 1st Jan. 1849, both amounts bearing eight per cent. interest from the 3d October, 1846. On the 1st March, 1848, $270 76, with eight per cent. interest from 3d October, 1846, was due by *G. A. Kilgore*; so that more than $3,046, were due *Farmer* for *Cooper*, before the second letter was written.

There is nothing then, strange in the hypothesis, that *Farmer* had received enough funds to forward $1,847, to *Cooper*, by the 2d Feb. 1850.

It should also be remembered, that the suit is against a deceased person. That plaintiff has not admitted in his petition any credits, although some are clearly established by the testimony.

We are of opinion, that from the evidence and circumstances of this case, defendant is entitled to the credit of a thousand dollars more than was allowed by the District Court.

It is urged by plaintiff, that legal interest is due to him from the time the money was collected by *Farmer*.

The whole therefore, except a trifling sum, was due before the 9th of March, 1852, the date of the Act, which gives legal interest from the maturity of debts.

This Act does not affect debts created anterior to its passage, even if it could affect those due by an agent to his principal.

The following is the basis of our judgment:

*Farmer*, as agent of *Cooper*, sold lands to the following persons, for the prices stated, to wit:

To *John M. Veale*,...................for $1,078 12¼ cash ....$1,078 12½
" *Jessee & Lewis Tubb*............... "   302 10  credit....  302 10
" *George Kilgore*..................... "   270 76  "   ....  270 76
" *Jessee Tubb*......................... "   274 23  "   ....  274 23
" *George Lowry*...................... "  1,496 20  "   .... 1,496 20
" *John Sholers*........................ "   975 43  "   ......  975 43
" *L. C. Calloway*...................... "   591 76  "   ....  591 76

Making the aggregate of land sold, say $4,988 60½..............$4,988 60½

CREDITS.

1. He is entitled to a credit of the *Tubb* notes which were returned by the Administrator to *Cooper*................. $  576 33
2. Commission of 5 per cent. for selling on $576 33..........   28 80
3. "   " 10 "   "   "   "   " $4,412 27, which is the real amount of sales, after deducting from $3,988 60½, the *Tubb* notes, $576 33, which were returned........... ..   441 20
4. Amount of taxes paid by *Farmer* on lands of *Cooper*......   79 46
5. Remitted through *Bogart & Foley*...................... 2,460 68
Three remittances, two of $1,000, each, and one of $468 68.

Total amount of credits, say, $3,594 47...................... $3,594 47

Balance due $1,394 13½, with 5 per cent. interest from the death of *Farmer*, to-wit: the 1st November, 1854.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed. And it is further ordered, adjudged and decreed, that plaintiff recover of defendants ($1,394 13,) with five per cent. interest thereon, from the 1st November, 1854.

It is further ordered and decreed, that defendant pay the cost of the lower court, and plaintiff and appellant those of appeal, and that the judgment be paid in due course of administration.